## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PERIPHAGEN, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:20-cv-00646 |
| | ) | |
| KRYSTAL BIOTECH, INC., KRISH S. | ) | |
| KRISHNAN, and SUMA KRISHNAN, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

| | | |
|---|---|---|
| KRYSTAL BIOTECH, INC., | ) | |
| | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:20-cv-00646 |
| | ) | |
| JAMES WECHUCK and DAVID | ) | |
| KRISKY, | ) | |
| | ) | |
| Third-Party Defendants. | ) | |

## OPINION

**Mark R. Hornak, Chief United States District Judge**

Before the Court is Third-Party Defendants' Motion to Dismiss (ECF No. 46) Third-Party

Plaintiff's Complaint (ECF No. 28) ("Third-Party Complaint") pursuant to Federal Rule of Civil

Procedure 12(b)(6). For the following reasons, Third-Party Defendants' Motion to Dismiss is

**GRANTED IN PART** and **DENIED IN PART.** Count I of the Third-Party Complaint survives

the Motion to Dismiss in full. As for Count II of the Third-Party Complaint, to the extent that

Third-Party Plaintiff Krystal Biotech, Inc. ("Krystal") seeks contribution for misappropriation of

trade secrets and unfair competition under Pennsylvania state law (the "state law claims"), Count II survives. To the extent that Count II seeks contribution for breach of contract and violations of federal law, however, the Motion to Dismiss is **GRANTED**. Finally, as to Count III, to the extent that Krystal seeks indemnification via the common law, Krystal's indemnification claim may not proceed for breach of contract or violations of federal law, and the Motion to Dismiss is **GRANTED** as to that portion of Count III. To the extent that Krystal alternatively pleads indemnification via contractual obligations, however, Count III may proceed in full, and the Motion to Dismiss is **DENIED** as to that portion of that Count. In summary, Third-Party Defendants' Motion to Dismiss is **DENIED** as to Count I in full; Count II as it pertains to the state law claims in PeriphaGen Inc.'s Complaint (aside from breach of contract); and Count III in full to the extent Krystal seeks contractual indemnity, but if discovery reveals that Krystal instead may only pursue common law indemnity, Krystal may only seek indemnification for the state law claims identified above (and not for breach of contract or federal law violations). Thus, the portions of Count II and Count III seeking contribution or indemnification via the common law for breach of contract and violations of federal law are **DISMISSED WITH PREJUDICE**.

## I.  <u>BACKGROUND</u>

An underlying dispute reflected in part in the Complaint in this action and between Plaintiff PeriphaGen, Inc. ("PeriphaGen") and Defendants Krystal, Krish Krishnan, and Suma Krishnan gives rise to the present third-party action. Krystal, as Third-Party Plaintiff, brings third-party claims against David Krisky and James Wechuck ("Drs. Krisky and Wechuck" or "the individuals") seeking contribution, indemnification, along with a damages claim for breach of contract. The facts set out below are drawn from the Third-Party Complaint and other materials which the Court may properly consider.

2

Krystal was founded as a California limited liability company in December 2015 by Krish and Suma Krishnan to develop an HSV-based gene therapy product for a genetic skin disease.[1] In March 2017, Krystal converted to a Delaware corporation. (ECF No. 28.) PeriphaGen, a company co-founded by Drs. Krisky and Wechuck, is a Delaware corporation that focuses on researching and developing HSV-1 gene therapy vectors. (*Id.*) From March to May 2016, Krystal and PeriphaGen engaged in business discussions, which ultimately led to a year-and-a-half long business relationship beginning in May 2016 that ultimately soured in October 2017. Through the course of that relationship, Krystal and PeriphaGen entered in to one (1) Confidential Disclosure Agreement (CDA); five (5) Material Transfer Agreements (MTAs); and one (1) Access and Use Agreement. (*Id.*) In addition to the CDA and MTAs, Krystal hired two former PeriphaGen employees. (*Id.*)

In June 2016, Drs. Krisky and Wechuck entered in to separate but identical Consulting Agreements with Krystal. (ECF Nos. 28-1 and 28-2.) Pursuant to these Consulting Agreements, Drs. Krisky and Wechuck worked as part-time consultants to assist Krystal with its independent vector development. (ECF No. 28.) Krystal alleges that Drs. Krisky and Wechuck "assured Krystal that their consulting services would be based on their work prior to joining PeriphaGen, and not on their experience at PeriphaGen." (*Id.*) Further, Krystal alleges that throughout the consulting

---

[1] Pursuant to Federal Rule of Evidence 201(b)(2) and (c)(1), a court may, on its own, take judicial notice of facts that are "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." Our Circuit, alongside a "number of our sister circuits[,] have held that this rule permits a court, in deciding a motion for judgment on the pleadings, to take judicial notice of properly-authenticated public disclosure documents filed with the SEC." *Oran v. Stafford*, 226 F.3d 275, 289 (3d Cir. 2000) (citing *Bryant v. Avado Brands*, 187 F.3d 1271, 1276 (11th Cir. 1999); *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1018 (5th Cir. 1996); *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)). While the motion presently before the Court is a motion to dismiss for failure to state a claim, the Court may take "judicial notice at any stage of the proceeding of a fact not subject to reasonable dispute that is accurate and [one that may be readily determined] by resort to a source whose accuracy cannot be reasonably questioned." *Ieradi v. Mylan Labs., Inc*., 230 F.3d 594, 600 n.3 (3d. Cir. 2000) (citing *SEC v. Bilzerian*, 814 F. Sup. 116, 123 n.10 (D.D.C. 1993); Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 201.12 (Joseph McLaughlin, ed., Matthew Bender 2d ed.1997)). The Court concludes that for these purposes, Krystal's SEC Form S-1 Registration Statement is an accurate source that "cannot be reasonably questioned."

relationship, Drs. Krisky and Wechuck were aware of Krystal's proprietary vector development, cell line, and manufacturing process. (*Id*.) Each Consulting Agreement included a "Warranty" section, which states that "none of the Services or Inventions or any development, use, production, distribution or exploitation thereof will infringe, misappropriate or violate any intellectual property or other right of any person or entity." (ECF Nos. 28-1 and 28-2.) Based on this warranty, Krystal alleges that Drs. Krisky and Wechuck, who were officers of PeriphaGen, authorized Krystal to use any services or information provided to it through the Consulting Agreements. (ECF No. 28.) The Consulting Agreements also included indemnity provisions. (ECF Nos. 28-1 and 28-2.)

The relationship between the two companies quickly deteriorated, ultimately leading to PeriphaGen suing Krystal in this case for allegedly misappropriating PeriphaGen's trade secrets and confidential information. (Compl., ECF No. 1.) PeriphaGen terminated the CDA and MTAs with Krystal on October 26, 2017. (*Id*.) The next day, Krystal terminated its Consulting Agreements with Drs. Krisky and Wechuck and vacated the PeriphaGen lab space. Krystal now brings the present third-party claims against Drs. Krisky and Wechuck, contending that "to the extent that Krystal is found liable to PeriphaGen under any claim of the Complaint, such liability arises from the conduct of [Drs.] Wechuck and Krisky." (ECF No. 28.)

Specifically, Krystal brings the following third-party claims against Drs. Krisky and Wechuck. First, Krystal seeks contribution from Drs. Krisky and Wechuck to the extent that Krystal is found liable for any of the claims raised in PeriphaGen's underlying Complaint.[2] Second, Krystal alleges it is entitled to indemnification by Drs. Krisky and Wechuck via contract,

---

[2] In the underlying Complaint (ECF No. 1), PeriphaGen brings the following claims against Krystal: (Count I) misappropriation of trade secrets under the Federal Defend Trade Secrets Act, 18 U.S.C. § 1836; (Count II) misappropriation of trade secrets under the Pennsylvania Trade Secrets Act, 12 Pa. Cons. Stat. §§ 5302, *et seq*.; (Count V) breach of contract; (Count VI) unfair competition under state law; and (Count VII) false description and false designation of origin under the Lanham Act, 15 U.S.C. §§ 1125(a)(1)(A) and 1125(a)(1)(B).

or secondarily, via the common law. (*Id.*) Finally, pursuant to Federal Rule of Civil Procedure

18(a), Krystal joins to this action a breach of contract claim against Drs. Krisky and Wechuck for

alleged violations of their Consulting Agreements. (*Id.*)

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), which Third-Party Defendants rely upon

to bring the instant Motion, the Court may dismiss a complaint for "failure to state a claim upon

which relief can be granted." The Supreme Court's decision in *Ashcroft v. Iqbal* held that

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements" are not enough to survive a Rule 12(b)(6) motion. 556 U.S. 662, 678 (2009) (citing

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Rather, a plaintiff's factual allegations

must "raise a right to relief above the speculative level" and state a plausible claim for relief.

*Twombly*, 550 U.S. at 555. In reading the complaint, the Court should "accept all factual allegations

as true, construe the complaint in a light most favorable to the plaintiff, and determine whether,

under a reasonable reading of the complaint, the plaintiff may be entitled to relief." *Blanyar v.*

*Genova Prods. Inc.*, 861 F.3d 426, 431 (3d Cir. 2017) (citing *Fowler v. UPMC Shadyside*, 578

F.3d 203, 210 (3d Cir. 2009)).

The Third Circuit further guides lower courts to utilize a three-part framework. First, the

Court "identif[ies] the elements of the claim." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir.

2011). Second, the Court "review[s] the complaint to strike conclusory allegations." *Id.* Third, the

Court "look[s] at the well-pleaded components of the complaint and evaluat[es] whether all of the

elements identified in part one of the inquiry are sufficiently alleged." *Id.* If the facts alleged in the

complaint "show" that the plaintiff is entitled to relief, the motion to dismiss should be denied. *See*

*Fowler*, 578 F.3d at 210–11.

III.     <u>DISCUSSION</u>

A.  <u>Count I: Breach of Contract</u>

Pursuant to Federal Rule of Civil Procedure 18(a), Krystal brings a breach of contract claim against Drs. Krisky and Wechuck alongside its third-party claims of contribution and indemnification. Krystal rests its breach of contract claim against these individuals on the following: Drs. Krisky and Wechuck "each covenanted that they would not use the intellectual property of any third party, including PeriphaGen, in connection with providing their consulting services to Krystal"; "each warranted that all of their work under the consulting agreements would be their original work"; and finally, "each warranted . . . that they had full rights to provide Krystal the 'assignments and rights provided[.]'" (ECF No. 28.) In sum, Krystal argues that "to the extent any confidential information or trade secrets of PeriphaGen were improperly disclosed to Krystal, they were disclosed by [Drs. Krisky and Wechuck] in breach of their consulting agreements," as summarized above. (ECF No. 28.)

In their Brief in Support of their Motion, Third-Party Defendants Drs. Krisky and Wechuck first argue that Krystal's claim for breach of contract fails as a matter of law because Krystal's claims for indemnification and contribution fail as a matter of law. (ECF No. 47.) The Third-Party Defendants rely on a case decided in the Middle District of Pennsylvania, *Vercusky v. Wech*, in which the court first dismissed a third-party contribution claim because it concluded that the third-party plaintiff and the third-party defendant were not joint tortfeasors. No. 13-01459, 2013 WL 5966159, at *1 (M.D. Pa. Nov. 8, 2013). The court then dismissed the third-party plaintiff's breach of contract claim, concluding that a breach of contract claim may not proceed in a third-party action where the contribution claim fails. *Id.* Secondarily, Third-Party Defendants here argue that the breach of contract claim should be dismissed because under the Consulting Agreements, Drs.

Krisky and Wechuck cannot be in breach where they had "no affirmative duty [under the Agreements] to prevent Krystal from improperly using PeriphaGen's confidential information or trade secrets." (ECF No. 47.)

First, Krystal's breach of contract claims against Drs. Krisky and Wechuck are properly before this Court pursuant to Federal Rules of Civil Procedure 14(a) and 18(a). As discussed later in this Opinion, the Court concludes that Krystal's Rule 14(a) claims for indemnification and contribution, in sufficient part, survive the Motion to Dismiss. Because the Court concludes that Krystal has properly asserted such third-party claims and has sufficiently stated a breach of contract claim upon which relief can be granted as discussed below, Krystal may pursue its breach of contract claims in this third-party action. *See Kohn v. Sch. Dist. of City of Harrisburg*, No. 11-00109, 2012 WL 3560822, at *1 n.3 (M.D. Pa. Aug. 16, 2012) (citing *Schwab v. Erie Lackawanna R.R.*, 438 F.2d 62, 68–70 (3d Cir. 1971)); *Ford Motor Co. v. Edgewood Props., Inc.*, Nos. 06-01278, 06-04266, 2007 WL 4526594, at *13 (D.N.J. Dec. 18, 2007) ("Because [the third-party plaintiff] has asserted a proper third-party claim for contractual indemnification, [the third-party plaintiff] may pursue its breach of contract and negligence counts as joined to the indemnification count if [the third-party plaintiff] states a claim upon which relief may be granted.").

Second, the Court concludes that taking the Third-Party Complaint's allegations as true, as it must, Krystal has facially pled a claim for breach of contract against Drs. Krisky and Wechuck. As part of this inquiry, the Court must first determine which jurisdiction's substantive law applies: Both Consulting Agreements include a choice-of-law clause, which provides that the Agreements "shall be governed by and construed in accordance with the laws of the State of California without regard to the conflicts of law provisions thereof." (ECF Nos. 28-1 and 28-2.) Because the originating action (*e.g.*, PeriphaGen's action against Krystal) was filed in the Western District of

Pennsylvania, this Court will apply "Pennsylvania choice of law rules to determine whether to apply [California law] or the law of another state[.]" *See Bey v. Citi Health Card*, No. 15-06533, 2017 WL 2880591, at *4 n.4 (E.D. Pa. July 16, 2017) (citing *Gay v. CreditInform*, 511 F.3d 369, 389 (3d Cir. 2007) (explaining that "if the District Court's jurisdiction in this federal question case had been based on diversity of citizenship of the parties[, it] would apply Pennsylvania's choice-of-law principles" and applying the same principle in a federal question case)). Under Pennsylvania law, "courts generally honor the intent of the contracting parties and enforce choice of law provisions in contracts executed by them." *Kruzits v. Okuma Mach. Tool, Inc*., 40 F.3d 52, 55 (3d Cir. 1994) (noting that Pennsylvania courts rely on section 187 of the *Restatement (Second) Conflict of Laws* in determining whether a choice-of-law provision will govern the contract).[3] A Pennsylvania court "will uphold choice-of-law provisions in contracts to the extent that the transaction bears a reasonable relation to the chosen forum," *Churchill Corp. v. Third Century Inc.*, 578 A.2d 532, 537 (1990) (citing 13 Pa. Cons. Stat. Ann. § 1105(a) (1999)), and so long as "application of the law of the chosen state" is not "contrary to a fundamental policy of a state which has a materially greater interest," *Gay*, 511 F.3d at 389 (quoting *Restatement (Second) Conflict of Laws* § 187).

In this case, the Court concludes that the California choice-of-law provision is enforceable because (1) Krystal was a California limited liability company at the time it entered into the Consulting Agreements (ECF Nos. 28-1 and 28-2), and thus, California "has a substantial relationship to the parties and the transaction." *See Bey*, 2017 WL 2880581, at *4 n.4 (concluding

---

[3] The *Restatement (Second) Conflict of Laws* provides that a contract's choice-of-law provision will apply "unless either (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue[.]" *Gay v. CreditInform*, 511 F.3d 369, 389 (3d Cir. 2007) (quoting *Restatement (Second) Conflict of Laws* § 187).

8

that where one party was from South Dakota, a South Dakota choice-of-law provision was applicable). And, (2) the Consulting Agreements' choice-of-law clauses are "not contrary to any fundamental public policy of Pennsylvania." *See id.* (citing *Gay*, 511 F.3d at 390 (concluding that applying a Virginia choice-of-law provision where one party was from Virginia was not contrary to any fundamental public policy of Pennsylvania)). Accordingly, the Consulting Agreements' choice-of-law clauses direct this Court to apply California substantive law in assessing the viability of the breach of contact claims, as well as whether breach has been sufficiently pled.

To establish a breach of contract claim under California law, a plaintiff must prove (1) the existence of a contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages. *See Richman v. Hartley*, 224 Cal. App. 4th 1182, 1186 (Ct. App. 2014) (citing *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1388 (Ct. App. 1990)). It is undisputed that Krystal and Drs. Krisky and Wechuck entered in to two (2) separate but identical Consulting Agreements with Krystal, and that Krystal paid Drs. Krisky and Wechuck for their services pursuant to those agreements. (ECF Nos. 28, 28-1, 28-2, 46, and 47.)

Based on the Court's consideration of the allegations of the Third-Party Complaint, the center of the dispute as to the breach of contract claim is "element three (3)": whether Krystal has sufficiently pled the Third-Party Defendants' breach. The individuals argue that Krystal does not allege exactly which provision of the Consulting Agreement "obligates Drs. Wechuck and Krisky to stop Krystal's independent, wrongful conduct," and therefore, where there was no duty, there can be no breach. (ECF No. 47.) However, Krystal's Third-Party Complaint does not allege that Drs. Krisky and Wechuck had a duty to stop Krystal from independent, wrongful conduct. Rather, it alleges that Drs. Krisky and Wechuck had a duty to only share information and collaborate with Krystal in a way that did not violate the rights of any other person or entity. It goes on to allege

9

that Drs. Krisky and Wechuck breached that duty by improperly disclosing to Krystal confidential information or trade secrets, and that to the extent "any confidential information or trade secrets . . . were used by Krystal without PeriphaGen's authorization, they were used by Krystal with the knowledge and authorization of Wechuck and/or Krisky . . . in breach of their consulting agreements[.]" (ECF No. 28.) At the pleading stage, such allegations, which are based on the provisions of the Consulting Agreements' express language (ECF Nos. 28-1 and 28-2), are sufficient to state a breach of contract claim under Federal Rule of Civil Procedure 8(a) and California law. Thus, taking the facts alleged in the Third-Party Complaint as true and drawing all reasonable inferences from them, the Third-Party Complaint alleges enough to facially show that Drs. Krisky and Wechuck breached said Consulting Agreements. As such, Krystal's breach of contract claims against Drs. Krisky and Wechuck survive the Third-Party Defendants' Motion to Dismiss.

### B. <u>Count II: Contribution</u>

In Count II of Krystal's Third-Party Complaint, Krystal seeks contribution from Drs. Krisky and Wechuck as to PeriphaGen's claims against Krystal, which the Third-Party Complaint identifies as: "various federal and state claims . . . including breach of contract, misappropriation of trade secrets, unfair competition, and false advertising/false designation of origin." (ECF No. 28.) If Krystal is found liable as to any of these claims, it asserts in its Third-Party Complaint that "those damages are the direct and proximate result of the actions of Wechuck and Krisky, and not the actions of Krystal," and thus, "Krystal is entitled to contribution from Wechuck and Krisky for all such damages, including any attorneys' fees incurred by Krystal in its defense of PeriphaGen's claims." (*Id.*)

Drs. Krisky and Wechuck argue that Krystal is not entitled to contribution for the underlying state law claims because (1) Krystal has not established as a matter of law that "it is a joint tortfeasor with Drs. Wechuck and Krisky" as Krystal does not concede liability;[4] and (2) that "even if Krystal were to concede liability, it still cannot establish that the parties are joint tortfeasors, because its liability to PeriphaGen involves separate acts, duties, and harm from any alleged liability Drs. Krisky and Wechuck may have to PeriphaGen." (ECF No. 47.) As for the breach of contract claims, the individuals argue that contribution is simply not available for breach of contract liability. (*Id.*) Finally, as to the federal claims, Drs. Krisky and Wechuck assert that "neither the Federal Defend Trade Secrets Act nor the False Description statute provide a right to contribution for claims arising under the Acts." (*Id.*) The Court will address each of Krystal's claims for contribution in turn.

## 1. **Breach of Contract Claim**

Under Pennsylvania law, a third-party plaintiff may not seek contribution or indemnity for breach of contract claims (*i.e.*, third-party claims, like contribution and indemnity, must be grounded in liability for tortious conduct). *See EQT Prod. Co. v. Terra Servs.*, 179 F. Supp. 3d 486, 493–94 (W.D. Pa. 2016) (applying Pennsylvania law and concluding that "contribution is not available for breach of contract claims [, and] . . . . [l]ike contribution, common law indemnity is only available for liability sounding in tort and is not available for breach of contract" (internal

---

[4] The Court rejects this argument for at least two reasons. First, it runs counter to the principle of alternative pleading, which is expressly permitted by Federal Rule of Civil Procedure 8(d)(2): a plaintiff "may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones." And second, that argument would necessarily lead to the conclusion that no contribution claim could be brought until there was a final liability and damages finding in the underlying lawsuit. But the case law indicates that such a claim may be brought in the context of the underlying case. *In re Motel 6 Securities Litig.*, No. 93-02183, 2000 WL 322782, at *3 (S.D.N.Y. Mar. 28, 2000) ("[T]hird-party plaintiffs 'need not concede their liability to the plaintiffs in order to assert a claim for contribution against a third-party defendant or cross-claim defendant.'" (quoting *Epstein v Haas Sec. Corp.*, 731 F. Supp. 1166, 1186–87 (S.D.N.Y. 1990)). In the Court's estimation, Krystal need not "confess" to liability in the original action before asserting a third-party claim for contribution in that same action.

citations omitted)). Accordingly, to the extent that Krystal's claim for contribution from Drs. Krisky and Wechuck is based on PeriphaGen's underlying breach of contract claims against Krystal, the contribution claim must be dismissed.

### 2. Federal Law Claims

Next, Krystal's claim for contribution for alleged liability under the Lanham Act and Federal Defend Trade Secrets Act, as averred in PeriphaGen's Complaint (ECF No. 1), must likewise be dismissed. A right to contribution under a federal statute may be created expressly or by implication if Congress's intent can be inferred as creating "an implied cause of action for contribution[.]" *Bowers v. Nat'l Collegiate Athletic Ass'n*, 346 F.3d 402, 420 (3d Cir. 2003) (internal quotation marks omitted) (quoting *Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 638, 639 (1981)) (citing *Nw. Airlines v. Transp. Workers Union*, 451 U.S. 77, 90 (1981)).

First, to the extent that Krystal seeks contribution from Drs. Krisky and Wechuck for PeriphaGen's claims against Krystal under §§ 1125(a)(1)(A) and 1125(a)(1)(B) of the Lanham Act, case law provides that contribution is not permitted for claims arising under these sections of the Act. *Getty Petroleum Corp. v. Island Transp. Corp.*, 862 F.2d 10, 16 (2d Cir. 1988) (holding that there is "[n]o express right of contribution under the Lanham Act" and relying on *Nw. Airlines*, 451 U.S. at 93–94, in which the Supreme Court declined to imply a right of contribution under the Equal Pay Act and Title VII because "[t]he comprehensive character of the remedial scheme expressly fashioned by Congress evidences an intent not to authorize additional remedies); *Santana Prods., Inc. v. Bobrick Washroom Equip., Inc.*, 69 F. Supp. 2d 678, 684 (M.D. Pa. 1999) (relying on *Nw. Airlines*, 451 U.S. at 93; *Texas Indus., Inc.*, 451 U.S. at 638; and *Getty Petroleum Corp.*, 862 F.2d at 16 to reach its conclusion that an implied right to contribution cannot be inferred from the Lanham Act). Accordingly, to the extent that Krystal seeks contribution for alleged False

12

Description and False Designation of Origin, 15 U.S.C. §§ 1125(a)(1)(A)–(B), the Motion to Dismiss is granted.[5]

Second, as to whether the Federal Defend Trade Secrets Act permits third-party contribution claims, no court to this Court's knowledge has squarely decided this question, and it appears to be a matter of first impression, but the Court is not without guidance in resolving it:

> In determining whether such an implied cause of action for contribution exists, *Texas Industries* and *Northwest Airlines* instruct the court to decipher the intent of Congress when it enacted [the Act]. 'Congressional intent may be discerned by looking to the legislative history and other factors: e.g., the identity of the class for whose benefit the statute was enacted, the overall legislative scheme, [and] the traditional role of the State in providing relief.'

*Santana Prods., Inc.*, 69 F. Supp. 2d at 683–84 (quoting *Texas Indus., Inc.*, 451 U.S. at 639 and *Nw. Airlines, Inc.,* 451 U.S. at 91) (considering the question in the context of the Lanham Act). "Factors relevant to this inquiry are the language of the statute itself, its legislative history, the underlying purpose and structure of the statutory scheme, and the likelihood that Congress intended to supersede or to supplant existing state remedies." *Nw. Airlines, Inc.,* 451 U.S. at 91.

In *Bowers,* the Third Circuit synthesized the Supreme Court's holdings in *Northwest Airlines*, *Texas Industries*, and *Musick, Peeler* (which analyzed whether Rule 10b-5 and the Securities and Exchange Act permitted contribution claims) and noted that "[w]hen a statute creates a private right of action but fails to provide expressly for a right to contribution, particularly if the remedial scheme is detailed, Congress's silence with regard to contribution weigh[s] heavily against implying such a right because there is a presumption that the silence reflects congressional intent *not* to create such a right." *Bowers*, 346 F.3d at 425 (emphasis in original) (harmonizing the

---

[5] To the extent PeriphaGen seeks Correction of Inventorship under 35 U.S.C. § 256, the Court agrees with Third-Party Defendants that this Act does not provide for monetary damages, (ECF No. 47), and further notes that Third-Party Plaintiff does not seek contribution for any alleged violations of this statute. (ECF No. 28.)

Supreme Court's holdings in *Northwest Airlines*, *Texas Industries*, and *Musick, Peeler, & Garret v. Employers Insurance of Wausau*, 508 U.S. 286 (1993)). However, "where courts have implied a right of action . . . [they] have broader latitude to determine whether a right to contribution is consistent with Congress's intent in creating the right sought to be enforced." *Id.*

In utilizing the analytical framework as laid out by the Supreme Court and as applied by the Third Circuit in *Bowers* and the district court in S*antana Products,* the Court concludes that the Federal Defend Trade Secrets Act does not permit third-party contribution claims as are asserted here.

### a. Language of the Statute

First, looking to the language of the statute itself, the district court in *Santana Products*, applying the *Northwest Airlines* inquiry, looked to the language of the Lanham Act and concluded that the Act "has no provisions governing contribution among wrongdoers." *Santana Prods., Inc.*, 69 F. Supp. 2d at 683. The court reached this conclusion by analyzing the Lanham Act in the same way that the Supreme Court in *Musick, Peeler* analyzed the form and language of the Securities and Exchange Act to determine whether a private remedy such as contribution was permitted by the Securities and Exchange Act and thus Rule 10b-5. In contrast to the Lanham Act, the Securities and Exchange Act had "provided for contribution in certain circumstances." *Santana Prods., Inc.*, 69 F. Supp. 2d at 683 (referring to the Supreme Court's holding in *Musick, Peeler*, 508 U.S. at 286). Specifically, in *Musick, Peeler*, the Supreme Court reasoned that "these explicit provisions [of the Securities and Exchange Act] for contribution are an important, not an inconsequential, feature of the federal securities laws and that consistency requires us to adopt a like contribution rule for the right of action existing under Rule 10b-5." *Musick, Peeler*, 508 U.S. at 297. The Third Circuit has also reiterated that when "a statute creates a right to private action but fails to provide

14

expressly for a right to contribution . . . there is a presumption that the silence reflects congressional intent *not* to create [a right to contribution]." *Bowers*, 346 F.3d at 425 (emphasis in original). Looking specifically to the language of the Federal Defend Trade Secrets Act, the Court concludes that like the Lanham Act and unlike the Securities and Exchange Act, it does not contain any express right to contribution, but does create a private right of action, see 18 U.S.C. § 1836(b)(1). The inclusion of an express private right of action and the omission of any explicit provision for contribution guides against finding a right to contribution here.

### b.  <u>Legislative History</u>

Second, as to the Federal Defend Trade Secrets Act's legislative history, that history does not offer any indication that Congress intended to include a right of contribution. Like the hearings before the House Committee on Patents which bolstered the district court's conclusion in *Santana Products* that the Lanham Act did not include a right to contribution, the Committee on the Judiciary submitted a Report to the Senate in consideration of the Federal Defend Trade Secrets Act that laid out the intent of the Act. *See* S. REP. NO. 114-220 (2016). The Report did not discuss a right to contribution, and reference to a right to contribution is notably absent from the Committee's discussion of the Act's comprehensive remedies and awards section. *Id.* (referring to 18 U.S.C. § 1836 (b)(3)(A)–(B)). Further, because the Federal Defend Trade Secrets Act includes a private right of action, unlike section 504 of the Rehabilitation Act and Title II of the ADA, the Court is counseled to conclude that Congress did not intend to leave to the courts the task of "defining the contours" of the Federal Defend Trade Secrets Act's scope of liability. *See Bowers*, 346 F.3d at 428 (concluding that because the ADA does not include an express private right of action, the legislative history of the ADA "supports the inference that Congress intended to leave to the courts the task of defining the contours of liability—including the existence of a right to

contribution"). Finally, the Federal Defend Trade Secrets Act was amended in 2016 to reflect that the Act's remedial scheme permitted injunctions and to update the chapter and subsection headings; however, the amendment did not add a right to contribution. Federal Defend Trade Secrets Act, Pub. L. 104-294, Title I, § 101(a), Oct. 11, 1996, 110 Stat. 3490 (1996), *amended by* Pub. L. 114-153, § 2(a), (d)(1),130 Stat. 376, 381 (2016); *see Santana Prods., Inc.*, 69 F. Supp. 2d at 684 n.4 (noting that in a recent amendment to the Lanham Act, which took place after the Second Circuit's decision in *Getty*–holding that the Lanham Act precluded contribution claims—Congress made no amendments to account for contribution). Thus, to the extent relevant, the Federal Defend Trade Secrets Act's legislative history does not steer toward a conclusion that a claim for contribution is authorized.

### c.   <u>Underlying Purpose and Structure of the Statutory Scheme</u>

Third is consideration of the underlying purposes and structure of the Federal Defend Trade Secrets Act's statutory scheme. In reviewing the underlying purpose of the Lanham Act, the district court in *Santana Products* concluded that the defendant seeking contribution was "not a member of the class intended to be protected under the Lanham Act" but rather was a party "intended to be punished under the Lanham Act." *Id.*; *see also Bowers*, 346 F.3d at 431 (holding that no right to contribution exists under section 504 of the Rehabilitation Act or Title II of the ADA because other provisions within the acts—such as section 501 of the Rehabilitation Act and Titles I and III of the ADA, *i.e.*, those "closest in structure, purpose, and intent"—share similar purposes and goals in terms of the class of protected persons but do not include a right to contribution). Likewise, Krystal, as Defendant in the underlying action brought by PeriphaGen, is not a party here meant to be protected by the Federal Defend Trade Secrets Act. Rather, Krystal's

alleged misappropriation of PeriphaGen's trade secrets is the type of behavior that is meant to be prevented and punished by the Act.

The district court in *Santana Products* also found it persuasive that the "Lanham Act . . . provides a comprehensive legislative scheme along with an explicit private cause of action under § 1125(a)." *Id.* Specifically, the court noted that because the Lanham Act "also provided specific instructions regarding the calculation of damages resulting from a violation from § 1125(a)," and that within that section, there was no mention of contribution, that was further evidence that Congress did not intend contribution to be part of the federal statutory scheme. *Id.* at 684 n.7.

Like the Lanham Act, the Federal Defend Trade Secrets Act similarly provides "an explicit private cause of action" under § 1836(b)(1). And pursuant to the explicit private cause of action, Congress provided a comprehensive scheme to enforce this private right (as indicated by § 1836 *et seq.*). Further, the Federal Defend Trade Secrets Act, like the Lanham Act, has its own damages section, titled "awards," see § 1836 (b)(3)(B). Within this section for remedies/awards, there is no mention of contribution. Taken together, the comprehensive damages scheme, which includes no reference to contribution, guides against permitting contribution claims under the Federal Defend Trade Secrets Act.

### d. Likelihood that Congress Intended to Supersede or Supplant Existing State Remedies

The Third Circuit in *Bowers* did not analyze whether Congress intended to supersede or supplant existing state remedies, having already concluded using the first three (3) analytical factors that section 504 of the Rehabilitation Act and Title II of the ADA did not permit third-party contribution claims. The district court in *Santana Products*, however, did persuasively analyze the Lanham Act's provisions under this final prong and concluded that "the Lanham Act was not intended to supplant or supersede state law." *Id.* at 684 (citing David Hricik, *Remedies of the*

*Infringer: The Use by the Infringer of Implied and Common Law Federal Rights, State Law Claims, and Contract to Shift Liability for Infringement of Patents, Copyrights, and Trademarks*, 38 TEX. TECH. L. REV. 1027, 1058–59 (1997) ("The federal Lanham Act merely supplements state law, and does not supersede it")). In the context of the Federal Defend Trade Secrets Act, Congress was explicit in its intention that the Act does not supersede state law. Like the Lanham Act and the court's interpretation of the Lanham Act in *Santana Products*, legislative history makes clear that the Federal Defend Trade Secret Act supplements state law. In the Committee on Judiciary's Report to the Senate, the Committee provided that the Act's "remedies provided in Section 3(A)(i)(1)(I) are intended to coexist with, and not preempt, influence, or modify applicable State law governing when an injunction should issue in a trade secret misappropriation matter." S. REP. NO. 114-220, at 9 (2016). While the Report, in discussing the damages section of the Act in § 3(B), does not make the same clear statement as to its relation to state law, the Report remains devoid of any mention of the right to contribution. *Id.* Where it is apparent that Congress did not intend to supersede state law, this serves as another factor in favor of concluding that the Federal Defend Trade Secrets Act does not contemplate nor intend a right to contribution.

To summarize, based on the roadmap provided in *Texas Industries*, *Northwest Airlines*, and *Musick, Peeler*, as well as the Third Circuit's holding in *Bowers* and the district court's analysis of the Lanham Act in *Santana Products*, the Court concludes that the Federal Defend Trade Secrets Act, like the Lanham Act, neither contemplates nor permits third-party contribution claims, and thus, the Motion to Dismiss as to Krystal's claim for contribution as to claims under this Act is granted.

### 3.   <u>Contribution Relative to State Law Claims</u>

Finally, while Krystal's claim of contribution as to violations of federal law is precluded, its claim for contribution for alleged state law claims, *e.g.*, unfair competition or misappropriation, may continue. *See Transdermal Prods., Inc. v. Performance Contract Packaging, Inc.*, 943 F. Supp. 551, 554 (E.D. Pa. 1996) (holding that where a plaintiff has "pleaded a claim under the Pennsylvania Trademark Act[, the] law of the Commonwealth unquestionably authorizes a joint tort-feasor defendant to seek contribution from fellow joint tort-feasors" (citing 42 Pa. Cons. Stat. Ann. § 8324 and compiling Pennsylvania cases)).

In Pennsylvania, contribution is governed by the "Pennsylvania Uniform Contribution Among Joint Tortfeasors Act." *T.C. v. Hempfield Area Sch. Dist.*, No. 17-01507, 2019 WL 1932377, at *3 (W.D. Pa. May 1, 2019) (citing 42 Pa. Cons. Stat. Ann. § 8324).[6] Joint tortfeasors are "two or more persons jointly or severally liable in tort for the same injury to persons or property, whether or not judgment has been recovered against all or some of them." 42 Pa. Cons. Stat. Ann. § 8322. "Two actors are joint tortfeasors if their conduct causes a single harm which cannot be apportioned, even if they acted independently." *Id.* (citing *Rabatin v. Columbus Lines, Inc.*, 790 F.2d 22, 25–26 (3d Cir. 1986)).

"If the acts of the parties are severable as to time, and neither has the opportunity to guard against the other's acts, and each breaches a different duty owed to the injured plaintiff, the parties cannot be considered joint tortfeasors." *TVSM, Inc. v. Alexander & Alexander, Inc.*, 583 F. Supp. 1089, 1092 (E.D. Pa. 1984) (citing *Lasprogata v. Qualls*, 397 A.2d 803, 805 (Pa. Super. Ct. 1979)).

---

[6] In this Count, Third-Party Plaintiff seeks damages, including "any attorney's fees incurred by Krystal in its defense of PeriphaGen's claims." (ECF No. 28.) While not pertinent to its analysis at this stage of litigation, the Court notes that the Pennsylvania statute permitting contribution among joint tortfeasors does not mention attorney's fees. *Temple Univ. Hosp., Inc. v. United States*, No. 16-01073, 2017 WL 2531948, at *2 (E.D. Pa. June 9, 2017) ("The language of the Act does not provide for an award of interest or attorney's fees and costs.").

The Court notes, however, that "[u]nder . . . *Lasprogata* and *Voyles*[ *v. Corwin*, 441 A.2d 381, 383 (Pa. Super. Ct. 1982)]¸ 'joint tortfeasors must owe the same duty to the plaintiff, at least in the sense that they each owe a duty to the plaintiff, *even if the cause of action is different.*'" *Vercusky v. Wech*, No. 13-01459, 2013 WL 5966159, at *4 (M.D. Pa. Nov. 8, 2013) (emphasis added) (quoting *Kohn v. Sch. Dist. of City of Harrisburg*, No. 11-00109, 2012 WL 1598096, at *5 (M.D. Pa. May 7, 2012)).

First, Krystal has sufficiently alleged that it is at least facially plausible that Drs. Krisky and Wechuck are joint tortfeasors with Krystal, in that Krystal and Drs. Krisky and Wechuck each owed "a duty to [PeriphaGen], even if the cause of action is different." (ECF No. 28); *Vercusky*, 2013 WL 5966159, at *4 (internal quotation marks omitted). The narrower issue the Court is being asked to decide as a matter of law is whether Krystal's alleged tortious conduct and Drs. Krisky and Wechuck's alleged tortious conduct caused a single harm to PeriphaGen that cannot be apportioned. While the duties owed by Drs. Krisky and Wechuck are, on their face, different from the duties Krystal owed to PeriphaGen, the Court cannot conclude as a matter of law, at this early stage of litigation, that the alleged breach of duty by each party did or did not cause an unapportionable harm to PeriphaGen, given the nature of the harms alleged in the main Complaint, and the bases for contribution asserted in the Third-Party Complaint. Whether any of that will survive the development of the factual record remains to be seen, but for now, the Court has to consider the issue in the context of what has been pled, and the Court concludes that the allegations meet the mark.

In some ways, by their Motion, Third-Party Defendants Drs. Krisky and Wechuck essentially request that this Court determine who will win at trial, in the sense that they argue the conduct alleged in PeriphaGen's underlying Complaint is solely that of Krystal, and not the

individuals. The Court concludes that the Third-Party Complaint (ECF No. 28) alleges facts sufficient to facially show that Drs. Krisky and Wechuck were engaged in at least some of the same tortious conduct that PeriphaGen alleges against Krystal. (ECF No. 1.) At present, the Third-Party Complaint's allegations are such that some tortious conduct may be joint between Krystal and the individuals; some may just be Krystal's; and some may only rest with the individuals; however, it will take discovery to sort out, decipher, and delineate the alleged liability (if any). If Krystal's right to contribution evaporates at the end of the day, then the contribution claims resting on state law grounds will disappear with it as well. Accordingly, to the extent that Krystal seeks contribution from Drs. Krisky and Wechuck for alleged state law violations (misappropriation of trade secrets and unfair competition, as alleged in PeriphaGen's Complaint (ECF No. 1)), Krystal's contribution claim survives the Motion to Dismiss.

### C.  Count III: Indemnity

In this Count, Krystal asserts that if it is "liable to PeriphaGen for damages . . . then Krystal is entitled to indemnification from Wechuck and Krisky for all such damages, including any attorneys' fees incurred by Krystal." (ECF No. 28.) Taking the facts as alleged as true and drawing all reasonable inferences from the face of the Third-Party Complaint, the Court reads this Count to seek indemnification under two theories: (1) contractual indemnity, as provided for in Drs. Krisky and Wechuck's Consulting Agreements (ECF Nos. 28-1 and 28-2), and (2) secondarily, common law indemnity. In opposition, Drs. Krisky and Wechuck argue that "[i]ndemnity is not 'available to a party that had any part in causing the injury,'" (ECF No. 47 (quoting *Builders Supply Co. v. McCabe*, 77 A.2d 368, 370–71 (Pa. 1952)), and thus, here, "where there is no scenario in which the third-party plaintiff could be liable to the plaintiff without also being at fault," the indemnity claim must be dismissed. (*Id.*) Finally, Third-Party Defendants assert that the existence

21

of the contractual indemnity provisions in the individuals' Consulting Agreements necessarily "bars Krystal from seeking common law indemnity." (*Id.*)

The Court first addresses Third-Party Defendants' argument that where an indemnity obligation exists by contract, a common law indemnity claim will be precluded. The Court concludes that such preclusion is not necessarily applicable at this juncture of litigation. A contractual indemnity claim and a common law indemnity claim may proceed "when there is some question about whether a contract exists or whether certain issues are covered by the contract[.]" *See Fidelity Nat. Title Ins. Co. v. B & G Abstractors, Inc.*, No. 15-00835, 2015 WL 6472216, at *10 (W.D. Pa. Oct. 27, 2015). However, where "there is no dispute that the parties' [a]greement covers the issue of indemnity . . . . [a plaintiff's] claim must live or die under the terms of the [a]greement." *Id.*

In this case, there is dispute as to whether the Consulting Agreements' indemnity provisions cover the conduct alleged to have occurred here—*i.e.*, the Court cannot conclude as a matter of California law whether the provision extends to the tortious conduct alleged when a question of fact remains as to which tortious conduct was independent, joint, or shared.[7] Because it is not certain on the facts alleged and disputed whether the Consulting Agreements' contractual indemnity provisions are valid and would apply, the Court concludes that the contractual and common law indemnity claims (other than common law indemnity claims for an alleged breach of contract by Krystal, or under federal law, as noted below) survive the motion to dismiss (a

---

[7] The issue of whether California permits such an indemnification provision was first raised in Third-Party Defendants' Reply (ECF No. 52) and rebutted in Third-Party Plaintiff's Sur-Reply. (ECF No. 55.) At this juncture, the Court concludes that it would be premature to kick out one theory of indemnity when fact discovery is a prerequisite to determining whether a contractual indemnity provision will apply. Thus, both theories of indemnity are permitted to proceed past the motion to dismiss stage.

conclusion additionally supported by Federal Rule of Civil Procedure 8(d)(2)'s permissive alternative pleading standard). *Id.*

Just as the Court concluded that Krystal's claims for contribution pertaining to PeriphaGen's underlying claims for breach of contract and federal law violations will be dismissed, Krystal's common law claims for indemnification as to breach of contract and violations of federal law will also be dismissed. *See EQT Prod. Co.*, 179 F. Supp. 3d at 493–94 (explaining that a claim for indemnity must sound in tort, not breach of contract); *Santana Prods., Inc.*, 69 F. Supp. 2d at 687 ("[T]here is no federal common law right to indemnification and Congress has not explicitly or implicitly provided such a right to indemnification under the Sherman Act or the Lanham Act.").[8]

Further, the Court reiterates the same principle it illustrated in analyzing Krystal's contribution claims: Third-Party Defendants prematurely ask this Court to determine which party will prevail at trial, as they argue that the conduct alleged in PeriphaGen's underlying Complaint is solely that of Krystal (and further assert that this conclusion prohibits Krystal from seeking secondary liability). Meanwhile, the Third-Party Complaint's allegations as averred by Krystal and disputed by the individuals are such that some tortious conduct may be joint between Krystal and the individuals; some may just be Krystal's; some may only rest with the individuals; and finally, that there may be no liability at all. Taking the Third-Party Complaint's allegations as true, the Court cannot definitively rule on a factual question as to who engaged in what tortious conduct, if any. It will take discovery to illuminate the contours of each party's alleged tortious behavior, if any. Whether discovery reveals that Krystal is solely liable (or liable at all) for PeriphaGen's

---

[8] Along the same lines, in that the Court concluded that the Federal Defend Trade Secrets Act does not expressly or impliedly permit third-party contribution claims, the Court concludes, for the same reasons, that the Act does not expressly or impliedly permit third-party indemnification claims.

alleged harm or not, the Court, at that point, will be better situated to analyze whether there is a genuine issue of material fact as to (1) the contractual indemnity provision's scope of coverage, as construed using California law; and (2) if such coverage fails under California law, whether Krystal can seek indemnification through the common law of Pennsylvania. Accordingly, in applying the motion to dismiss standard of review, the Court concludes that Krystal's Third-Party Complaint has facially stated a claim as to indemnity, and Krystal's alternative theories of indemnity may simultaneously proceed as follows: the contractual indemnity theory may proceed in full while the common law indemnity theory may proceed in part for misappropriation of trade secrets/confidential information and unfair competition (*i.e.*, the claims other than common law indemnity claims for an alleged breach of contract or under federal law).

## IV.   CONCLUSION

To conclude, Third-Party Defendants' Motion to Dismiss (ECF No. 46) is **GRANTED IN PART** and **DENIED IN PART**. Count I, for breach of contract, survives the Motion to Dismiss in full. The portions of Count II and Count III seeking contribution or common law indemnity for violations of state law (other than breach of contract) may also proceed. The portion of Count III seeking indemnification via the Consulting Agreements' provisions may proceed in full. The portions of Counts II and III pertaining to contribution or common law indemnity for breach of contract and violations of federal law are **DISMISSED WITH PREJUDICE**.


   s/ Mark R. Hornak
Mark R. Hornak
Chief United States District Judge


Dated:  December 1, 2020
cc:  All counsel of record